[Cite as *Lidrbauch v. Wright State Univ. Boonshoft School of Med.*, 2017-Ohio-820.]

| | |
|---|---|
| ELENA LIDRBAUCH, etc., et al. | Case No. 2016-00330 |
| Plaintiffs | Magistrate Holly True Shaver |
| v. | DECISION OF THE MAGISTRATE |
| WRIGHT STATE UNIVERSITY BOONSHOFT SCHOOL OF MEDICINE | |
| Defendant | |

{¶1} On September 1, 2016, the parties filed a stipulation regarding the civil immunity of Janice M. Duke, M.D. On October 19, 2016, the court ordered the parties to file additional evidence regarding Dr. Duke's duties as a state employee, such as her employment contract and additional stipulated facts regarding the care and treatment that she provided to plaintiffs Angela Williams and Azavier Preston. On December 16, 2016, counsel for Dr. Duke filed additional evidence for the court to consider.

{¶2} R.C. 2743.02(F) states, in part:

{¶3} "A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of the officer's or employee's employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims that has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action."

{¶4} R.C. 9.86 states, in part:

{¶5} "[N]o officer or employee [of the state] shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his

duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶6} "[I]n an action to determine whether a physician or other health-care practitioner is entitled to personal immunity from liability pursuant to R.C. 9.86 and 2743.02(A)(2), the Court of Claims must initially determine whether the practitioner is a state employee. * * *

{¶7} "If the court determines that the practitioner is a state employee, the court must next determine whether the practitioner was acting on behalf of the state when the patient was alleged to have been injured. If not, then the practitioner was acting 'manifestly outside the scope of employment' for purposes of R.C. 9.86. If there is evidence that the practitioner's duties include the education of students and residents, the court must determine whether the practitioner was in fact educating a student or resident when the alleged negligence occurred." *Theobald v. Univ. of Cincinnati,* 111 Ohio St.3d 541, 2006-Ohio-6208, ¶ 30-31.

{¶8} "[T]he question of scope of employment must turn on what the practitioner's duties are as a state employee and whether the practitioner was engaged in those duties at the time of an injury. Thus, proof of the content of the practitioner's duties is crucial. The Court of Claims must have evidence of those duties before it can be determined whether the actions allegedly causing a patient's injury were 'in furtherance of the interests of the state' or, in other words, within the scope of employment." *Id.* ¶ 23.

{¶9} According to plaintiffs' complaint, on December 2, 2004, plaintiff Angela Williams began her prenatal care with Miami Valley Hospitals Center for Women's Healthcare. On January 31, 2005, Williams was noted to have a bicornuate uterus, which caused her pregnancy to be considered high risk in nature and warranted close monitoring of fetal growth throughout her pregnancy. Plaintiffs allege that Dr. Duke

provided negligent medical care to Williams during her pregnancy and in the delivery of Preston which resulted in permanent injury to Preston.

{¶10} In the stipulation, the parties agree as follows:

{¶11} "1.    From December 4, 2004 to June 30, 2005, Janice M. Duke, M.D. held a full-time appointment to the faculty of the Wright State University Boonshoft School of Medicine at the faculty rank of Assistant Professor of Surgery, as an 'employee' of the Wright State University (as that term is used in Ohio Rev. Code §§109.36 and 9.86), and at such time she was also an employee of Wright State Physicians Women's Healthcare.

{¶12} "2.    As set forth in the Complaint, the allegations of negligence against Dr. Duke in this matter arise out of the treatment of Angela Williams from December 2, 2004 through June 30, 2005.

{¶13} "3.    At all times during that treatment relevant to the allegations made in this suit, Dr. Duke was acting within the course and scope of her employment with the Wright State University, as well as Wright State Physicians Women's Healthcare."

{¶14} In her affidavit, Dr. Duke avers as follows:

{¶15} "1.    I, Janice Duke MD, am an obstetrician/gynecologist licensed in the state of Ohio.  I have been named in a lawsuit in Montgomery County Common Pleas in addition to this action in the Ohio Court of Claims, alleging malpractice in connection with the care and treatment of Angela Williams.

{¶16} "2.    On October 11, 1999, I entered into a contract with Wright State University Boonshoft School of Medicine ('WSUBSOM Contract') to serve as an Assistant Professor and Instructor in the WSUBSOM Department of Obstetrics and Gynecology. This contract is attached to this Affidavit as Exhibit 'A' and is a true and accurate copy thereof.

{¶17} "3.    Pursuant to the WSUBSOM employment contract, I was to be stationed in Miami Valley Hospital ('MVH') where I was required to engage in teaching

and medical practice activities for Boonshoft residents and students. (Exhibit 'A'). Specifically, under the WSUBSOM contract, I was responsible for a teaching role in medical student and resident education relative to the activities of the Boonshoft Department of Obstetrics and Gynecology under the auspices of the School of Medicine. (Id.) I was also required to perform other duties as mutually agreed upon by the Chair, Department of Obstetrics and Gynecology. (Id.) As terms of my employment with WSUBSOM the University paid me a full time salary with benefits.

{¶18} "4. On August 31, 2004, the WSUBSOM offered me the position of Medical Director, Center for Women's Health ('CWH') at Miami Valley hospital in the Department of Obstetrics & Gynecology at the Wright State University Boonshoft School of Medicine. I accepted the position on September 4, 2004. A true and accurate copy of this contract is attached as Exhibit 'B.' This contract was in force during all relevant times including 12/2/04-7/1/05.

{¶19} "5. My duties as the Medical Director at the MVH Center for Women's Health are set forth in detail in Exhibit 'B.' These duties included but were not limited to: treating patients of the clinic while supervising and educating residents in the setting of clinical care; I was tasked with generating, improving, and maintaining all practice policies for the CWH; I chaired monthly meetings with residents, CWH nursing, faculty, and the OB/Gyn Chair to discuss and resolve Clinic issues; meet yearly with WSUBSOM gynecology teaching associates in order to maintain communication about the clinical instruction program and how it can be improved for the benefit of the residents of WSU; and to assist in achieving a clinical environment which was efficient, patient friendly, clinically sound, and positive for the residents, and faculty of WSU.

{¶20} "6. Angela Williams first treated at the Miami Valley Hospital Center for Women's Healthcare Perinatal Clinic on December 2, 2004. She was 11 weeks pregnant. On July 1, 2005, Angela Williams was admitted to Miami Valley Hospital and delivered her son Azavier Preston, by Cesarean Section.

{¶21} "7. During the time period December 2, 2004 through July 1, 2005, I was carrying out my duties as set forth above, namely supervising residents in providing clinical care to patients at the MVH CWH. Pursuant to my contract as set forth herein, I was required to maintain a clinical practice and treat obstetrical patients, such as Angela Williams, at Miami Valley Hospital Center for Women's Health in addition to providing clinical instruction to WSU residents.

{¶22} "8. During the relevant time period of December 2, 2004, through July 1, 2005, and pursuant to my WSUBSOM Contract, I was an attending obstetrician who was treating patients and teaching residents and students of the Wright State University Boonshoft School of Medicine at the MVH Center for Women's Healthcare Prenatal Clinic.

{¶23} "9. Specifically, I supervised the following Boonshoft residents in the prenatal care and treatment of Angela Williams at the MVH Center for Women's Healthcare Prenatal Clinic on the following dates: May 27, 2005 (Boonshoft Resident Ealena Callendar MD), June 2, 2005 (Boonshoft Resident Dr. Williams), June 10, 2005 (Boonshoft Resident Heather Kleinhenz MD), June 17, 2005, and June 24, 2005 (Boonshoft Resident Andre Harris MD). (See Exhibit 'C', Progress notes from the MVH Center for Women's Healthcare Prenatal Clinic where Dr. Duke was stationed under her WSUBSOM Contract.) Azavier Preston was delivered by C-Section on July 1, 2005.

{¶24} "10. Exhibit 'C' is a true and accurate copy of Angela Williams' Progress Notes of her prenatal care at the MVH Center for Women's Healthcare Prenatal Clinic.

{¶25} "11. Pursuant to my contract with WSUBSOM, I was required to treat patients and supervise residents on behalf of WSUBSOM at the CWH from the time Angela Williams first presented until she delivered at Miami Valley Hospital."

{¶26} Upon review of the evidence submitted, the magistrate finds that Dr. Duke was a state employee and that she was engaged in her duties under her WSUBSOM contract as a state employee when she rendered medical care to both Williams and

Preston from December 4, 2004 through June 30, 2005. Therefore, the magistrate recommends that Janice Duke, M.D., is entitled to immunity pursuant to R.C. 9.86 and 2743.02(F), and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against her based upon the allegations in this case.

{¶27} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

David W. Skall
Michael F. Becker
Becker Haynes Building
134 Middle Avenue
Elyria, Ohio 44035-5620

Brian M. Kneafsey, Jr.
Jeanna V. Jacobus
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

James P. Triona
Paul J. Vollman
2021 Auburn Avenue
Cincinnati, Ohio 45219

**Filed January 10, 2017**
**Sent to S.C. Reporter 3/7/17**